**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON<br>PO Box 14596<br>Washington, DC 20044<br><br>*Plaintiff,*<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU<br>1700 G Street, N.W.<br>Washington, DC 20552,<br><br>UNITED STATES DEPARTMENT OF EDUCATION<br>400 Maryland Ave., S.W.<br>Washington, DC 20202,<br><br>SOCIAL SECURITY ADMINISTRATION<br>6401 Security Blvd.<br>Baltimore, MD 21235, and<br><br>UNITED STATES DEPARTMENT OF VETERANS AFFAIRS<br>811 Vermont Ave., N.W.<br>Washington, DC 20420.<br><br>*Defendants* | Case No. |

## <u>COMPLAINT</u>

1.      Shortly after the 2024 Presidential election, then-President-elect Donald Trump announced the formation of the "Department of Government Efficiency" ("DOGE") to be led by Elon Musk and Vivek Ramaswamy. The President-elect vested DOGE with authority to "dismantle Government Bureaucracy, slash excess regulations, cut wasteful expenditures, and restructure

Federal Agencies." DOGE began work promptly by seeking documents, data, and information

from an array of federal departments and agencies.  Within hours of his inauguration, President

Trump issued an executive order that established DOGE as a component of the Executive Office of

the President ("EOP"), dedicated to implementing the President's "DOGE agenda."

2.    On December 19, 2024, Citizens for Responsibility and Ethics in Washington

("CREW") filed Freedom of Information Act ("FOIA") requests for the communications between

DOGE and those associated with it, and Defendants Consumer Financial Protection Bureau

("CFPB"), United States Department of Education ("ED"), the Social Security Administration

("SSA"), and the Department of Veterans Affairs ("VA"). CREW's requests also sought the

Defendants' internal documents regarding DOGE, which was intended to fundamentally alter their

operations as it reshaped the federal government. In violation of the FOIA, Defendants failed to

make determinations on CREW's requests within the statutorily required period. CREW therefore

seeks an order directing the Defendants to immediately begin searching for, processing and

disclosing all non-exempt records responsive to its requests.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B)

and 28 U.S.C. §§ 1331, 2201, and 2202.

4.    Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C.

§ 1391(e).

5.    Because Defendants have failed to comply with the applicable time-limit

provisions of FOIA, CREW is deemed to have exhausted its administrative remedies pursuant to

5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to an order requiring Defendants to process its

FOIA requests.

## PARTIES

6.    Plaintiff CREW is a non-partisan, non-profit government watchdog organization committed to protecting the rights of citizens to be informed about the activities of government officials and agencies and to ensuring ethics, transparency, and integrity in government. To advance its mission, CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW routinely uses government records made available to it under FOIA, the Federal Advisory Committee Act, and other federal laws, and widely disseminates those records to the public.

7.    Each Defendant is an agency within the meaning of 5 U.S.C. § 552(f)(1), has possession and control of the requested records, and is responsible for fulfilling CREW's FOIA requests.

## STATEMENT OF FACTS

### *Responsibilities of DOGE*

8.    On November 13, 2024, then President-elect Donald Trump announced that Elon Musk would be named the head of the Department of Government Efficiency, which Trump referred to as "DOGE."[1]

9.    The announcement stated that Elon Musk would co-lead the agency, with Vivek Ramaswamy, and that its mission would be to "pave the way for [the Trump] Administration to dismantle Government Bureaucracy, slash excess regulations, cut wasteful expenditures, and restructure Federal Agencies."[2]

10.    Messrs. Musk and Ramaswamy co-authored an article in the Wall Street Journal, describing DOGE's strategic plan to "pursue three major kinds of reform: regulatory rescissions,

---

[1] Donald J. Trump (@realDonaldTrump), X (Nov. 13, 2024, 6:21 AM), https://x.com/realDonaldTrump/status/1856658569124262092.
[2] *Id.*

administrative reductions and cost savings."[3] They also stated that DOGE would operate with

"embedded appointees" at various federal agencies to develop its recommendations for

"reform."[4] They pledged to identify and provide a list of "thousands" of unlawful regulations so

that President Trump could "nullif[y]" them, pursue "mass head-count reductions across the

federal bureaucracy" to "identify[] pinpoint executive actions that would result in immediate

savings for taxpayers," and to conduct "[l]arge-scale audits" to reform the "procurement

process."[5]

      11.     During the presidential transition period, Musk and DOGE representatives

communicated with federal agencies concerning DOGE's plans for those agencies in the new

administration as DOGE prepared to implement Trump's directive to drastically reshape the

functions of government once he returned to office.

      12.     Moreover, before and after the Presidential inauguration, DOGE representatives

embedded themselves in federal departments and agencies and gained access to an array of

sensitive governmental and personal information. DOGE's operations prior to President Trump's

inauguration included "sending representatives to agencies across the federal government . . . to

begin preliminary interviews" with agency officials, including officials at "the Treasury

Department, the Internal Revenue Service and the departments of Homeland Security, Veterans

Affairs, and Health and Human Services."[6]

      13.     After his inauguration, President Trump issued several Executive Orders and

---

[3] Elon Musk & Vivek Ramaswamy, Elon Musk and Vivek Ramaswamy: The DOGE Plan to Reform Government, WSJ (Nov. 20, 2024), https://www.wsj.com/opinion/musk-and-ramaswamy-the-doge-plan-to-reform-governmentsupreme-court-guidance-end-executive-power-grab-fa51c020?mod=hp_opin_pos_0.
[4] *Id*.
[5] *Id*.
[6] Faiz Siddiqui *et al*., DOGE is dispatching agents across U.S. government, Wash. Post (Jan. 10, 2025), https://www.washingtonpost.com/business/2025/01/10/musk-ramaswamy-dogefederal-agencies/.

presidential memoranda that empower DOGE to implement the President's "DOGE agenda" by controlling the core functions of government: personnel, regulation, and spending.

14.    Upon taking office, Trump issued Executive Order 14158, entitled "Establishing and Implementing the President's "Department of Government Efficiency." Exec. Order No. 14158, 90 Fed. Reg. 8441 (Jan. 29, 2025). EO 14158 establishes DOGE in the form of the U.S. DOGE Service housed within the EOP, which it creates by renaming and reorganizing the U.S. Digital Service. E.O. 14158, § 3(a). The EO directs DOGE to "implement the President's DOGE agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity." *Id.*, § 1. The EO creates within DOGE both an Administrator who reports to the White House Chief of Staff and a temporary organization called the "U.S. DOGE Service Temporary Organization," which is "headed by the USDS Administrator" and is "dedicated to advancing the President's 18-month DOGE agenda." *Id.* § 3(b).  Under the EO, the U.S. DOGE Service Temporary Organization sunsets on July 4, 2026. *Id.*

15.    To facilitate DOGE's implementation of the President's "DOGE agenda," EO 14158 further requires the installation of a "DOGE Team" of at least four employees at every federal agency. *Id.*, § 1. Each agency head must establish the agency's DOGE team in consultation with DOGE, may only select the members of the DOGE Team in consultation with DOGE, and must "ensure that DOGE Team Leads coordinate their work with USDS and advise their respective Agency Heads on implementing the President's DOGE Agenda." E.O. 14158, § 3(c).

16.    Executive Order, EO 14170, entitled "Reforming the Federal Hiring Process and Restoring Merit to Government Service," directs the Assistant to the President for Domestic Policy, in consultation with the DOGE Administrator, Director of the Office of Management and Budget, and the Director of the Office of Personnel Management, to develop a "Federal Hiring

Plan." EO 14170, 90 Fed. Reg. 8621 (Jan. 30, 2025). The stated purpose of that plan is to bring "to the Federal workforce only highly skilled Americans dedicated to the furtherance of American ideals, values, and interests." EO 14170, § 2(a).

17.     Executive Order 14210, entitled "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative," 90 Fed. Reg. 9669 (Feb. 11, 2025), requires each agency head to "develop a data-driven plan, in consultation with its DOGE Team Lead," who is required by executive order to coordinate with DOGE, "to ensure new career appointment hires are in highest-need areas." EO 14210, § 3(b). The hiring plan requires that new hiring decision be made in consultation with the Agency's DOGE Team Lead. *Id.*, § 3(b)(i). The EO further prohibits agencies from filling vacancies that the "DOGE Team Lead assesses should not be filled, unless the Agency Head determines the positions should be filled." *Id.*, § 3(b)(ii).

18.     Executive Order 14219, entitled "Ensuring Lawful Governance and Implementing the President's 'Department of Government Efficiency' Deregulatory Initiative," directs agency heads "in coordination with their DOGE Team Leads and the Director of the Office of Management and Budget, [to] initiate a process to review all regulations subject to their sole or joint jurisdiction for consistency with law and Administration policy." 90 Fed. Reg. 10583 (Feb. 25, 2025); EO 14219, § 2(a). With respect to new regulations, "agency heads shall consult with their DOGE Team Leads and the Administrator of OIRA on potential new regulations as soon as practicable." *Id.*, § 4.

19.     Executive Order 14222, entitled, "Implementing the President's 'Department of Government Efficiency' Cost Efficiency Initiative." 90 Fed. Reg. 11095 (Mar. 3, 2025). EO 14222, § 3 directs agency heads, with assistance "as requested" from the agency's DOGE Team Lead, to "build a centralized technological system within the agency to seamlessly record every payment issued by the agency." EO 14222 also directs agency heads to consult with the agency's

DOGE Team Lead to issue guidance "to require that the agency employees submit a brief, written justification prior to that employee's approval of a payment under covered contracts and grants." *Id.*, § 3(a)(i). Those payment justifications are, to the maximum extent possible, to be posted publicly. *Id.*, § 3(a)(ii).

20.     Further, EO 14222 requires each agency head to consult with the agency's DOGE Team Lead to review "all existing covered contracts and grants and, where appropriate and consistent with applicable law, terminate or modify . . . such covered contracts and grants to reduce overall Federal spending or reallocate spending to promote efficiency and advance the policies of my Administration." *Id.*, § 3(b). Each agency head must consult with the agency's DOGE Team Lead to review the agency's contracting policies, procedures, and personnel. *Id.*, § 3(c). Each agency head must also consult with the agency's DOGE Team Lead to issue "guidance on signing new contracts or modifying existing contracts to promote Government efficiency and the policies of my Administration." *Id.*, § 3(d)(i). Each DOGE Team Lead must provide the DOGE Administrator with a monthly informational report on that agency's contracting activities. *Id.*, § 3(d)(ii).

21.     Within 30 days of the date of the issuance of EO 14222, each agency head is required to promptly identify all termination rights the agency head may have under existing leases of Government-owned real property and, in consultation with agency's DOGE Team Lead and the Administrator of General Services or his designee, determine whether to exercise such rights. *Id.*, § 3(g)(ii).

22.     Capitalizing on the unprecedented authority granted to them, Musk and DOGE personnel have wielded extraordinary power to drastically change the functions, staffing, and missions of federal departments and agencies, including the Defendants, by terminating and suspending thousands of employees, slashing agency budgets and programs and cancelling

contracts. Doing so required continual communication between DOGE and the departments and agencies in which it has operated.

<u>*DOGE's Impact at Defendant Agencies*</u>

23.    DOGE's actions have had a significant impact on the Defendant agencies.

24.    After the Office of Management and Budget closed CFPB's headquarters and ordered its employees to stop working, DOGE gained control of the agency's computer system.[7] DOGE affiliates at CFPB took credit for cancellations of agency contracts and developed plans to terminate the agency's approximately 1,200 employees.[8]

25.    DOGE affiliates at ED "have been granted access to Department information technology and data systems," including operations of ED's student loan programs, have access to tax-related information maintained by the Department, and have worked to identify agency contracts that should be terminated.[9]

26.    According to reports, DOGE officials were able to access the SSA Enterprise Data Warehouse, "a centralized database that includes records on individuals who have been issued a Social Security number or have applied for or received Social Security benefits, including wage, tax and bank account information."[10] The Acting Commissioner of SSA, Lee Dudek, later

---

[7] Jason Leopold & Evan Weinberger, DOGE-Backed Halt at CFPB Comes Amid Musk's Plans for 'X' Digital Wallet, Bloomberg (Feb. 10, 2025), https://www.bloomberg.com/news/features/2025-02-10/doge-backed-halt-at-cfpb-comes-amidmusk-s-plans-for-x-digital-wallet; Stacy Cowley, 36 Hours After Russell Vought Took Over Consumer Bureau, He Shut Its Operations, N.Y. Times (Feb. 9, 2025), https://www.nytimes.com/2025/02/09/business/vought-cfpb-musk-trump.html.
[8] *Nat'l Treasury Emps. Union v. Vought*, No. CV 25-0381 (ABJ), 2025 WL 942772, at *24-25 (D.D.C. Mar. 28, 2025).
[9] *Am. Fed'n of Tchrs. v. Bessent*, 765 F. Supp. 3d 482, 490 (D. Md. 2025) (citing affidavits of DOGE affiliate at ED, Adam Ramada).
[10] Ken Thomas, The Newly Elevated Acting Head of Social Security Covertly Helped DOGE, Wall Street J. (Feb. 20, 2025), https://www.wsj.com/politics/policy/social-security-commissioner-leland-dudek-doge-343d3f5e.

confirmed that DOGE officials had "read" access to SSA systems.[11] In an opinion barring DOGE from continued access to SSA systems, Judge Hollander of the U.S. District Court for the District of Maryland explained that DOGE "is essentially engaged in a fishing expedition at SSA . . . . thereby exposing personal, confidential, sensitive, and private information that millions of Americans entrusted to their government."[12]

27.    DOGE dispatched agents to begin preliminary interviews at VA prior to Trump's inauguration.[13]  After the inauguration, DOGE provided a list of 875 contracts for the VA to cancel and has been involved in mass firings at the agency.[14]

## STATUTORY FRAMEWORK

28.    Agencies shall grant requesters requests for expedited processing of their FOIA requests when they demonstrate "compelling need." 5 U.S.C. § 552(a)(6)(E)(i)(I). "Compelling need" requires the requestor to show that they are "a person primarily engaged in disseminating information" with an urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

29.    A determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request. 5 U.S.C. § 552(a)(6)(E)(ii)(I).

---

[11] Statement from Lee Dudek, Acting Commissioner, about Commitment to Agency Transparency and Protecting Benefits and Information, SSA (Feb. 19, 2025), https://www.ssa.gov/news/press/releases/2025/#2025-02-19.

[12] *Am. Fed'n of State, Cnty., & Mun. Emps. v. Soc. Sec. Admin*., __ F. Supp. 3d __, No. 1:25-cv-00596, 2025 WL 868953 (D. Md. Mar. 20, 2025).

[13] Faiz Siddiqui et al., DOGE is dispatching agents across U.S. government, Wash. Post (Jan. 10, 2025), https://www.washingtonpost.com/business/2025/01/10/musk-ramaswamy-dogefederal-agencies/.

[14] Roni Caryn Rabin and Nicholas Nehamas, Chaos at the V.A.: Inside the DOGE Cuts Disrupting the Veterans Agency, N.Y. Times (Mar. 10, 2025), https://www.nytimes.com/2025/03/09/us/politics/veterans-affairs-doge-cuts.html.

30.     Agency action to deny a request for expedited processing pursuant to this subparagraph, and failure by an agency to respond in a timely manner to such a request, is subject to judicial review. 5 U.S.C. § 552(a)(6)(E)(iii).

31.     Upon receipt of a FOIA request, an agency must make a determination whether to comply with it and notify the requester of that determination within twenty days of receipt of a request, excluding Saturdays, Sundays, and legal public holidays. 5 U.S.C. § 552(a)(6)(A)(i).

32.     Moreover, the FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules ... shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

33.     After a FOIA request is received by an agency, it must "make reasonable efforts to search for the records." 5 U.S.C. § 552(a)(3)(C). If the agency identifies any responsive records, the agency must make them "promptly available." *Id.*

34.     If an agency fails to make a determination within the prescribed time frame, requesters are deemed to have exhausted their administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

## CREW'S FOIA Requests

### Consumer Financial Protection Bureau

35.     On December 19, 2024, CREW filed a federal Freedom of Information Act request with the CFPB in which it requested the following records from November 5, 2024, to the date this request is processed:

> 1) Any and all communications between employees of CFPB and Elon Musk, Vivek Ramaswamy, Antonio Gracias, William (Bill) McGinley, or Steve Davis.
> 2) Any and all communications between employees of CFPB and any other individual purporting to represent, work for, or communicate on behalf of Elon Musk, Vivek Ramaswamy, Antonio Gracias, William (Bill) McGinley, or Steve Davis.
> 3) Any and all communications between employees of CFPB and any other individual purporting to have an association with, represent, work for, or communicate on behalf of the Department of Government Efficiency ("DOGE").

4) Any and all communications between employees of CFPB and any other individual purporting that they will in the future have an association with, represent, work for, or communicate on behalf of the Department of Government Efficiency ("DOGE").

5) Any and all communications between employees of CFPB and any other individual purporting to have an association with, represent, work for, or communicate on behalf of "Delivering Outstanding Government Efficiency Caucus," "DOGE Caucus," and related terms.

6) Any and all communications between employees of CFPB and Senator Joni Ernst, Congresswoman Marjorie Taylor Greene, or their offices between November 5, 2024 and the present regarding DOGE, CFPB's organizational structure, staffing, or expenditures or the efficiency of any of its programs, functions, or operations.

7) Any and all communications between employees of CFPB and any other individual purporting that they will in the future have an association with, represent, work for, or communicate on behalf of "Delivering Outstanding Government Efficiency Caucus," "DOGE Caucus," and related terms.

8) Any and all records within CFPB regarding "Department of Government Efficiency," "DOGE," "Government Efficiency Commission," "Delivering Outstanding Government Efficiency Caucus," or "DOGE Caucus."

A copy of this FOIA request is attached as Exhibit A.

36.     CREW's FOIA request stated that, because litigation is reasonably foreseeable, CFPB should institute an agency-wide preservation hold on all documents potentially responsive to the request.

37.     CREW's FOIA request asked CFPB to search for responsive records regardless of format, medium, or physical characteristics. CREW stated that it sought records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material, and included without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

38.     In its December 19, 2024, FOIA request, CREW sought a fee waiver in accordance with 5 U.S.C. § 552(a)(4)(A) and agency regulations.

39.     CREW stated that the subject of the FOIA request concerns the operations of the federal government and that the disclosures likely will contribute to a better understanding of

11

government procedures and public policy in a significant way. That is even truer now than it was on December 19, 2024. The request for a fee waiver was primarily and fundamentally for non-commercial purposes.

40.    In addition, CREW's request stated that it should not be charged search or review fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) because it qualifies as a member of the news media. CREW routinely disseminates information obtained through FOIA. Given the intense public interest in these records, CREW will disseminate to the public any records that it receives as a result of the CFPB request filed.

41.    CFPB acknowledged receipt of CREW's FOIA Request by email on December 23, 2024, and assigned it FOIA tracking number CFPB-2025-0284-F.

42.    In that acknowledgement letter, CFPB stated that due to the need to consult with two or more agency components, which it regarded as "unusual circumstances," it invoked a 10-day extension of the 20 business day deadline for response pursuant to 5 U.S.C. § 552(a)(6)(B).

43.    In that acknowledgment letter, CFPB also held in abeyance CREW's request for a fee waiver pending review of responsive records. CFPB did determine that CREW was a media requestor and would charge CREW for the costs of duplication of pages in excess of 100.

44.    On January 31, 2025, CREW resubmitted CFPB-2025-0284-F, seeking the same eight categories of records stated in Paragraph 36, *supra*. It included in the January 31, 2025, submission a request for expedited processing pursuant to 5 U.S.C. § 552 and 12 C.F.R. § 1070.17(b)(1). CREW explained in detail that it was entitled to expedited processing because there is an "urgency to inform the public about an actual or alleged Federal Government activity" and because CREW "is primarily engaged in disseminating information." *Id*., § 1070.14(b)(2)(ii). A copy of this letter is attached as Exhibit B.

45.    As of the date of filing this Complaint, Defendant CFPB has not acknowledged or

responded to CREW's January 31, 2025, letter or its request for expedited processing.

46.    More than ten days have passed since the request for expedited processing was made. CFPB has therefore failed to comply with 5 U.S.C. § 552(a)(6)(e)(ii)(1).

47.    More than twenty days have passed since CREW submitted its requests, and Defendant CFPB has therefore failed to comply with 5 U.S.C. § 552(a)(6)(A)(i).

48.    As a result, CREW has constructively exhausted its administrative remedies, 5 U.S.C. § 552(a)(6)(C)(i), and seeks immediate judicial review.

**Department of Education**

49.    On December 19, 2024, CREW filed a federal Freedom of Information Act request with ED in which it requested the following records from November 5, 2024, to the date this request is processed:

> 1) Any and all communications between employees of ED and Elon Musk, Vivek Ramaswamy, Antonio Gracias, William (Bill) McGinley, or Steve Davis.
> 2) Any and all communications between employees of ED and any other individual purporting to represent, work for, or communicate on behalf of Elon Musk, Vivek Ramaswamy, Antonio Gracias, William (Bill) McGinley, or Steve Davis.
> 3) Any and all communications between employees of ED and any other individual purporting to have an association with, represent, work for, or communicate on behalf of the Department of Government Efficiency ("DOGE").
> 4) Any and all communications between employees of ED and any other individual purporting that they will in the future have an association with, represent, work for, or communicate on behalf of the Department of Government Efficiency ("DOGE").
> 5) Any and all communications between employees of ED and any other individual purporting to have an association with, represent, work for, or communicate on behalf of "Delivering Outstanding Government Efficiency Caucus," "DOGE Caucus," and related terms.
> 6) Any and all communications between employees of ED and Senator Joni Ernst, Congresswoman Marjorie Taylor Greene, or their offices between November 5, 2024 and the present regarding DOGE, ED's organizational structure, staffing, or expenditures or the efficiency of any of its programs, functions, or operations.
> 7) Any and all communications between employees of ED and any other individual purporting that they will in the future have an association with, represent, work for, or communicate on behalf of "Delivering Outstanding Government Efficiency Caucus," "DOGE Caucus," and related terms.
> 8) Any and all records within ED regarding "Department of Government Efficiency," "DOGE," "Government Efficiency Commission," "Delivering Outstanding

Government Efficiency Caucus," or "DOGE Caucus."

A copy of this FOIA request is attached as Exhibit C.

50.    CREW's FOIA request stated that, because litigation is reasonably foreseeable, ED

should institute an agency-wide preservation hold on all documents potentially responsive to the

request.

51.    CREW's FOIA request asked ED to search for responsive records regardless of

format, medium, or physical characteristics. CREW stated that it sought records of any kind,

including paper records, electronic records, audiotapes, videotapes, photographs, data, and

graphical material, and included without limitation all correspondence, letters, emails, text

messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes

of any meetings, telephone conversations, or discussions.

52.    In its December 19, 2024, FOIA request, CREW sought a fee waiver in accordance

with 5 U.S.C. § 552(a)(4)(A) and agency regulations.

53.    CREW stated that the subject of the FOIA request concerns the operations of the

federal government and that the disclosures likely will contribute to a better understanding of

government procedures and public policy in a significant way. That is even truer now than it was

on December 19, 2024. The request for a fee waiver was primarily and fundamentally for non-

commercial purposes.

54.    In addition, CREW's request stated that it should not be charged search or review

fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) because it qualifies as a member of the news

media. CREW routinely disseminates information obtained through FOIA. Given the intense

public interest in these records, CREW will disseminate to the public any records that it receives

as a result of the ED request filed.

55.    On December 20, 2024, ED acknowledged receipt of CREW's FOIA Request and

assigned it FOIA tracking number 25-01633-F.

56.    In that acknowledgement letter, ED stated that none of the eight requests reasonably described the records sought. The letter provided some guidance on how CREW should perfect its request.

57.    In that acknowledgment letter, ED did not determine CREW's request for a fee waiver.

58.    On January 31, 2025, CREW resubmitted request 25-01633-F, seeking the same eight categories of records stated in Paragraph 49, *supra*. It included in the January 31, 2025 submission a request for expedited processing pursuant to 5 U.S.C. § 552 and 5 C.F.R. § 1303.40(e).  CREW explained in detail that it was entitled to expedited processing because there is "urgency to inform the public about an actual or alleged Federal Government activity" and because CREW "is primarily engaged in disseminating information." *Id*. § 1070.14(b)(2)(ii). A copy of this letter is attached as Exhibit D.

59.    On February 3, 2025, Defendant ED acknowledged CREW's January 31, 2025, letter and assigned it a new request number – 25-02253-F. The acknowledgment did not address CREW's request for expedited processing or its request for a fee waiver. It repeated its determination that the request did not reasonably describe the records requested.

60.    On February 10, 2025, CREW responded to ED's assertion that the requests did not reasonably describe the records sought. Although CREW was not able to provide requested email addresses for individuals associated with DOGE because those email addresses are not publicly available, CREW did supply requested public email addresses, specific names of offices likely to have records requested, keywords and terms describing the subject matter of requested correspondence. CREW reminded ED that it sought communications in all forms, including email and texts, on Signal and similar applications. A copy this response is attached as Exhibit E.

61.    On February 28, 2025, ED acknowledged CREW's February 10, 2025, submission. It appears to have assigned CREW's request a third tracking number – 25-02596-F. That acknowledgement letter stated that ED required no additional information. It did not state that the ED continued to believe that CREW's request did not reasonably describe the records sought.

62.    On March 7, 2025, ED denied CREW's request for expedited processing of its FOIA request on the ground that CREW did not demonstrate a compelling need for the information and had failed to substantiate that there is an urgency to inform the public concerning any actual or alleged Federal Government activity. That determination was made well after the 10 day statutory deadline to do so. 5 U.S.C. § 552(a)(6)(e)(ii)(1).

63.    On March 28, 2025, ED sent CREW a letter, with reference to FOIA request 25-02496-F, that it was still processing the request.

64.    More than twenty days have passed since CREW submitted its request, and Defendant ED has therefore failed to comply with 5 U.S.C. § 552(a)(6)(A)(i).

65.    As a result, CREW has constructively exhausted its administrative remedies, 5 U.S.C. § 552(a)(6)(C)(i). and seeks immediate judicial review.

**Social Security Administration**

66.    On December 19, 2024, CREW filed a federal Freedom of Information Act request with the Social Security Administration (SSA) in which it requested the following records from November 5, 2024, to the date this request is processed:

1) Any and all communications between employees of SSA and Elon Musk, Vivek Ramaswamy, Antonio Gracias, William (Bill) McGinley, or Steve Davis.
2) Any and all communications between employees of SSA and any other individual purporting to represent, work for, or communicate on behalf of Elon Musk, Vivek Ramaswamy, Antonio Gracias, William (Bill) McGinley, or Steve Davis.
3) Any and all communications between employees of SSA and any other individual purporting to have an association with, represent, work for, or communicate on behalf of the Department of Government Efficiency ("DOGE").
4) Any and all communications between employees of SSA and any other individual purporting that they will in the future have an association with, represent, work

for, or communicate on behalf of the Department of Government Efficiency
("DOGE").

5) Any and all communications between employees of SSA and any other individual
purporting to have an association with, represent, work for, or communicate on
behalf of "Delivering Outstanding Government Efficiency Caucus," "DOGE Caucus,"
and related terms.

6) Any and all communications between employees of SSA and Senator Joni Ernst,
Congresswoman Marjorie Taylor Greene, or their offices between November 5,
2024 and the present regarding DOGE, SSA's organizational structure, staffing, or
expenditures or the efficiency of any of its programs, functions, or operations.

7) Any and all communications between employees of SSA and any other individual
purporting that they will in the future have an association with, represent, work
for, or communicate on behalf of "Delivering Outstanding Government Efficiency
Caucus," "DOGE Caucus," and related terms.

8) Any and all records within SSA regarding "Department of Government Efficiency,"
"DOGE," "Government Efficiency Commission," "Delivering Outstanding
Government Efficiency Caucus," or "DOGE Caucus."

A copy of this FOIA request is attached as Exhibit F.

67.     CREW's FOIA request stated that, because litigation is reasonably foreseeable,

SSA should institute an agency-wide preservation hold on all documents potentially responsive to

the request.

68.     CREW's FOIA request asked SSA to search for responsive records regardless of

format, medium, or physical characteristics. CREW stated that it sought records of any kind,

including paper records, electronic records, audiotapes, videotapes, photographs, data, and

graphical material, and included without limitation all correspondence, letters, emails, text

messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes

of any meetings, telephone conversations, or discussions.

69.     In its December 19, 2024, FOIA request, CREW sought a fee waiver in accordance

with 5 U.S.C. § 552(a)(4)(A) and agency regulations.

70.     CREW stated that the subject of the FOIA request concerns the operations of the

federal government and that the disclosures likely will contribute to a better understanding of

government procedures and public policy in a significant way. That is even truer now than it was

on December 19, 2024. The request for a fee waiver was primarily and fundamentally for non-commercial purposes.

71.     In addition, CREW's request stated that it should not be charged search or review fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) because it qualifies as a member of the news media. CREW routinely disseminates information obtained through FOIA. Given the intense public interest in these records, CREW will disseminate to the public any records that it receives as a result of the SSA request filed.

72.     SSA acknowledged receipt of CREW's FOIA Request by email on December 19, 2024, and assigned it FOIA tracking number 2025-FOIA-00524.

73.     SSA has not further responded to CREW's FOIA request.

74.     More than twenty days have passed since CREW submitted its request, and Defendant SSA has therefore failed to comply with 5 U.S.C. § 552(a)(6)(A)(i).

75.     As a result, CREW has constructively exhausted its administrative remedies, 5 U.S.C. § 552(a)(6)(C)(i). and seeks immediate judicial review.

### Department of Veterans Affairs

76.     On December 19, 2024, CREW filed a federal Freedom of Information Act request with the Department of Veterans Affairs (VA) in which it requested the following records from November 5, 2024, to the date this request is processed:

1) Any and all communications between employees of VA and Elon Musk, Vivek Ramaswamy, Antonio Gracias, William (Bill) McGinley, or Steve Davis.
2) Any and all communications between employees of VA and any other individual purporting to represent, work for, or communicate on behalf of Elon Musk, Vivek Ramaswamy, Antonio Gracias, William (Bill) McGinley, or Steve Davis.
3) Any and all communications between employees of VA and any other individual purporting to have an association with, represent, work for, or communicate on behalf of the Department of Government Efficiency ("DOGE").
4) Any and all communications between employees of VA and any other individual purporting that they will in the future have an association with, represent, work for, or communicate on behalf of the Department of Government Efficiency ("DOGE").

5) Any and all communications between employees of VA and any other individual purporting to have an association with, represent, work for, or communicate on behalf of "Delivering Outstanding Government Efficiency Caucus," "DOGE Caucus," and related terms.

6) Any and all communications between employees of VA and Senator Joni Ernst, Congresswoman Marjorie Taylor Greene, or their offices between November 5, 2024 and the present regarding DOGE, VA's organizational structure, staffing, or expenditures or the efficiency of any of its programs, functions, or operations.

7) Any and all communications between employees of VA and any other individual purporting that they will in the future have an association with, represent, work for, or communicate on behalf of "Delivering Outstanding Government Efficiency Caucus," "DOGE Caucus," and related terms.

8) Any and all records within CFPB regarding "Department of Government Efficiency," "DOGE," "Government Efficiency Commission," "Delivering Outstanding Government Efficiency Caucus," or "DOGE Caucus."

A copy of this FOIA request is attached as Exhibit G.

77.    CREW's FOIA request stated that, because litigation is reasonably foreseeable, VA should institute an agency-wide preservation hold on all documents potentially responsive to the request.

78.    CREW's FOIA request asked VA to search for responsive records regardless of format, medium, or physical characteristics. CREW stated that it sought records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material, and included without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions.

79.    In its December 19, 2024, FOIA request, CREW sought a fee waiver in accordance with 5 U.S.C. § 552(a)(4)(A) and agency regulations.

80.    CREW stated that the subject of the FOIA request concerns the operations of the federal government and that the disclosures likely will contribute to a better understanding of government procedures and public policy in a significant way. That is even truer now than it was on December 19, 2024. The request for a fee waiver was primarily and fundamentally for non-

commercial purposes.

81.    In addition, CREW's request stated that it should not be charged search or review fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) because it qualifies as a member of the news media. CREW routinely disseminates information obtained through FOIA. Given the intense public interest in these records, CREW will disseminate to the public any records that it receives as a result of the VA request filed.

82.    VA acknowledged receipt of CREW's FOIA Request by email on December 19, 2024, and assigned it FOIA tracking number 25-04344.

83.    On December 23, 2024, VA sent CREW an email requesting the names of the VA officials or VA offices it is seeking communications on and all keywords associated with the search. It further stated that the request for a fee waiver was under review.

84.    On January 17, 2025, CREW responded to VA's December 23, 2024, email by providing the specific names of the VA offices to requested be searched for responsive communications and provided key words for that search.

85.    On January 31, 2025, CREW resubmitted FOIA 25-04344, seeking the same eight categories of records stated in Paragraph 76, *supra*. It included in the January 31, 2025, submission a request for expedited processing pursuant to 5 U.S.C. § 552 and 38 C.F.R. § 1.556(d). CREW explained in detail that was entitled to expedited processing because there is "urgency to inform the public about an actual or alleged Federal Government activity" and because CREW "is primarily engaged in disseminating information." *Id*. § 1.556(d)(1). A copy of this letter is attached as Exhibit H.

86.    VA did not respond to that request within the 10-day statutory deadline to do so. 5 U.S.C. § 552(a)(6)(e)(ii)(1).

87.    On March 5, 2025, VA sent CREW an email stating that it had not clarified the

request and that it was still too broad. It placed the request on hold for 30 days.

88.    On April 7, 2025, CREW responded, further narrowing its request. CREW's response is attached as Exhibit I.

89.    On April 18, 2025, VA sent CREW an email stating CREW's request was still "unduly burdensome, overly broad and not reasonably specific." VA sent similar emails on April 25, 2025 and May 2, 2025 arguing CREW's request was too broad.

90.    On May 15, 2025, CREW and VA met via video call to discuss further narrowing CREW's request.  At this point, CREW has sufficiently narrowed and clarified its FOIA request and VA's continued objections are unreasonable.

91.    As of the date of filing of this Complaint, Defendant VA has not substantively responded to CREW's January 31, 2025, letter or request for expedited processing.    More than twenty days have passed since CREW submitted its requests, and Defendant VA has therefore failed to comply with 5 U.S.C. § 552(a)(6)(A)(i).  As a result, CREW has constructively exhausted its administrative remedies, 5 U.S.C. § 552(a)(6)(C)(i). and seeks immediate judicial review.

**PLAINTIFF'S CLAIMS**

**Count I as to Defendants CFPB, ED, and VA**

92.    Plaintiff repeats and realleges paragraphs 1-91 as if they were fully set forth herein.

93.    Pursuant to the FOIA and applicable agency regulations, on January 31, 2025, CREW sought expedited processing of the FOIA requests it had previously filed on December 19, 2024.

94.    As an organization with a mission to uncover and to reveal to the public the activities of the federal government, CREW is primarily engaged in disseminating information.

95.    DOGE's breakneck dismantling of swaths of the federal government, termination

of long-standing government programs, ending of billions of dollars of government grants and

termination or suspension of tens of thousands of federal employees, all without Congressional

authorization to do so, is unprecedented in American history. And it continues. In light of this

assault on the federal government, separation of powers and the rule of law, disclosure of

communications between DOGE and the agencies it is wrecking is of utmost urgency.

96.      A determination of whether to provide expedited processing shall be made, and

notice of the determination shall be provided to the person making the request, within 10 days

after the date of the request. 5 U.S.C. § 552(a)(6)(E)(ii)(1).

97.      In violation of that statute, Defendants CFPB, ED, and VA did not respond to

CREW's expedited processing requests within 10 days.

## Count II as to All Defendants

98.      Plaintiff repeats and realleges paragraphs 1-91 as if they were fully set forth herein.

99.      In its December 19, 2024, FOIA request, CREW properly sought records within

the custody and control of each Defendant.

100.      Defendants wrongfully withheld agency records requested by CREW by failing to

make determinations on CREW's requests within the statutorily prescribed time period of 20

business days, as required by 5 U.S.C. § 552(a)(6)(A), and by continuing to withhold documents

that are non-exempt and responsive to CREW's FOIA requests.

101.      CREW has constructively exhausted its administrative remedies.

102.      Accordingly, CREW is entitled to injunctive and declaratory relief requiring

Defendants to immediately process and disclose all requested records to CREW.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests this Court:

1.      Issue a declaration that CREW is entitled to the immediate processing and

disclosure of the requested records to it;

2.      Issue a declaration that CREW is entitled to expedited processing of all requests for which it has sought such handling;

3.      Order the Defendants to preserve all records, in whatever form they exist, potentially responsive to CREW's requests prior to and during the processing of its requests;

4.      Order Defendants to immediately process and disclose all responsive records to CREW;

5.      Order Defendants to grant CREW's requests for fee waivers;

6.      Provide for expeditious processing of this action;

7.      Retain jurisdiction over this action to ensure that no agency records are wrongfully withheld;

8.      Award Plaintiff attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(F)(i); and

9.      Grant any other such relief that this Court may deem just and proper.


Dated: June 5, 2025                                    Respectfully submitted,

                                                        *Jeffrey S. Gutman*
                                                       Jeffrey S. Gutman (D.C. Bar No. 416954)
                                                       1712 Hobart St., N.W.
                                                       Washington, D.C. 20009
                                                       (202) 631-5129
                                                       jsgutmandc@gmail.com


                                                        *Alex Goldstein*
                                                       Alex Goldstein (D.C. Bar No. 90005086)
                                                       Kayvan Farchadi (D.C. Bar No. 1672753)
                                                       Jonathan E. Maier* (D.C. Bar No. 1013857)
                                                       CITIZENS FOR RESPONSIBILITY AND
                                                       ETHICS IN WASHINGTON

P.O. Box 14596
Washington, D.C. 20004
Telephone: (202) 408-5565
Fax: (202) 588-5020
agoldstein@citizensforethics.org
kfarchadi@citizensforethics.org
jmaier@citizensforethics.org

*Counsel for Plaintiff*

*admission pending, *pro hac vice* application forthcoming